[Civ. No. 4055.   Fourth Dist.   June 9, 1950.]

F. R. DRINKHOUSE, as Trustee, Appellant, v. BIRCH RANCH AND OIL COMPANY (a Corporation) et al., Respondents.

West, Vizzard, Howden & Baker for Appellant.

W. E. James for Respondents.

BARNARD, P. J.—This is an action to quiet title to certain land as against any claims of the defendants arising from an oil and gas lease.

In 1924, the Calivada Oil Company and the Nevada Hills Mining Company executed a joint venture agreement involving several properties, including the land here in question. On May 15, 1928, these corporations executed an agreement providing for a division between them of the assets belonging to the joint venture which then stood in the name of Calivada Oil Company, including this land. This agreement, after reciting that it was for the purpose of settling differences which had arisen between them, and that the Calivada Oil Company was in the process of liquidation and did not propose to engage in any business other than such as was incidental thereto, provided that the assets of the joint venture should be disposed of and the proceeds divided, 61.54 per cent to be paid to the Calivada and 38.46 per cent to the Nevada Hills Company, and that when all of the assets of the joint venture had been thus divided the agreement should terminate.

This agreement also provided that Calivada might continue with dissolution proceedings, and that if it was dissolved before the assets of the joint venture were fully divided it should transfer any remaining assets to John Lawton Butler, thereby appointed by Calivada, and Warren B. Richardson thereby appointed by Nevada Hills, as trustees, setting forth the interest of the parties and providing for the disposition of such remaining assets in accordance with the provisions of that agreement. It further provided that in the event of the death, resignation or inability to act of either of the trustees thus appointed, the corporation by whom said trustee was appointed should appoint another person to act in his place with like duties and powers, and in the event that either corporation had at that time been dissolved the appointment of such a successor-trustee must be made by a majority vote

of the persons who were directors of the corporation at the date of its dissolution.

On November 13, 1928, the Calivada Company conveyed the property to Butler and Richardson, in trust, for the purposes set forth in the prior agreement. This conveyance, which was recorded on November 26, 1928, referred to the agreements above mentioned and recited that the May 15, 1928, agreement had provided that such a conveyance in trust might be made to John Lawton Butler, appointed by Calivada and Warren B. Richardson appointed by Nevada, as trustees, upon the trusts and for the purposes and uses therein specified. It also stated that this conveyance was made pursuant to and in accordance with the provisions of the agreement of May 15, 1928. It further provided that (a) "as speedily as possible the trustees shall convert into cash all property of the joint venture . . . which . is hereby transferred . . ." and as often as they have $1,000 on hand shall divide the proceeds between the two corporations, or to their stockholders, in the proportion of 61.54 per cent to the Calivada Company and 38.46 per cent to the Nevada Hills Company or its successor; (b) that during the life of the trust the trustees shall collect the income of the trust property, if any, and shall pay all taxes and charges; (c) that when all the property of such joint venture shall have been thus divided the trust shall terminate; and (d) that the trustees shall not be liable for any depreciation in the value of the property during the continuance of the trust.

Calivada was voluntarily dissolved, and at the time of the trial of this action its board of directors was in existence for the purpose of winding up its affairs.

On February 1, 1931, Butler and Richardson, as trustees, leased the land in question under an oil and gas lease to A. Otis Birch. In 1939, that lease was surrendered and Butler and Richardson, as trustees, gave a new oil and gas lease to Birch-Royer Oil Company. Butler died in September, 1942, and no trustee was appointed in his place. On August 4, 1943, Richardson, purporting to act as surviving trustee, extended the time for the commencement of the drilling of a well, under the 1939 lease, to August 1, 1944. On November 12, 1946, Richardson, purporting to act as surviving trustee, gave a new lease to Birch Ranch and Oil Company, running for two years and so long thereafter as oil or gas should be produced. Some oil was produced under the 1946 lease, and

some royalty was paid to Richardson as surviving trustee, but the production was not in paying quantities.

Under the 1939 and 1946 leases Butler and Richardson, as trustees, or Richardson as surviving trustee, received $1,600 as rental at the rate of $200 per year for eight years, in lieu of drilling. On December 18, 1947, Richardson, in consideration of $200 thus paid to him, extended the time for commencing operations to January 1, 1949, with a provision that by paying another $200 prior to that date the time for drilling could be further extended to January 1, 1950. A tender of this amount was made prior to January 1, 1949, but was refused by the plaintiff. Being uncertain as to the outcome of this action, the defendants have conducted no further operations on the premises since that date.

Richardson purported to act as surviving trustee until some time after June, 1948, when he resigned. On September 13, 1948, the plaintiff was appointed by the court as sole trustee and this action was begun on the same day for the purpose of cancelling the 1946 lease. Based on the facts above stated the court found that the 1946 lease was valid and in full force and effect, and entered judgment accordingly. The plaintiff has appealed from the judgment and the appeal is presented on an agreed statement.

■ ■The appellant contends that the trust agreement authorized the trustees to do only such acts as were necessary to convert the corpus of the trust into cash; that since there is no conflict in the evidence, consisting solely of the trust agreements, this court is not bound by the trial court's construction thereof; and that the record demonstrates that the surviving trustee lacked the power to execute the 1946 lease. The respondents contend that the power to make such a lease may be implied from the language of the trust conveyance providing for a distribution to the beneficiaries "if, when, and as often" as $1,000 in cash is on hand; for collection of "income" of the trust property; and that the trustee shall not be liable for any depreciation in value of the trust property. It is further argued that for some 15 years the trust agreement was construed by the parties as giving the trustees the right to make such a lease. While it appears that the two trustees actually made such leases over a period of some years there is no evidence that the beneficiaries of the trust ever knew of their action in this regard, or that any rental or royalty thus received was distributed to them.

The trust conveyance of November 13, 1928, made solely

by Calivada, clearly disclosed that the assets conveyed were a part of a joint venture in which the other corporation owned an interest, and that it was made pursuant to the prior agreement between the two corporations. It fully referred to the agreement of May 15, 1928, purported to be made pursuant to and in accordance therewith, and disclosed that it was made as a part of the settlement of differences between the two corporations each of which had appointed one of the trustees named "upon the trusts and for the uses and purposes specified in said agreement of May 15, 1928." That agreement clearly disclosed that its purpose was to wind up the affairs of the joint venture, to go out of the oil business, and to reduce the assets to cash and distribute them as rapidly as possible. Calivada had only such power to make this trust conveyance as was given it by the agreement of May 15, 1928, and the trust conveyance disclosed this fact. Permission to make the conveyance included provisions to protect both corporations and particularly provided that each should be represented and should continue to be represented by a separate trustee appointed, and to be appointed, by it. The trust conveyance and the agreement of May 15, 1928, must be construed together in determining the powers given to these trustees. When a vacancy did occur Richardson, who represented the minority interest, continued to act as the sole trustee in violation of the agreement which was made a part of the trust and, so far as the record discloses, without the knowledge of the beneficiaries or of those holding a majority interest in the trust, thus leaving the large Calivada interest unrepresented.

This trust was created to liquidate the business of the joint venture and to dispose of its assets promptly, and not to continue business or enter into new commitments which might well run for many years in the future. Under these circumstances, the power to make such a lease may not be implied from the trust agreement and the trust instrument should not be thus construed.

A further consideration, but one apparently not presented to the trial court, is the fact that Richardson, in purporting to act as surviving trustee in making the 1946 lease, violated the express terms of the trust. Apparently, it was assumed that he had such right under section 2288 of the Civil Code, which provides that on the death of one of several cotrustees the trust survives to the others. While the trust itself may survive for some purposes, the application of this

section is limited by the terms of the trust agreement. Section 2287 of that code provides that the court shall appoint a trustee whenever there is a vacancy and the declaration of trust does not provide a practical method of appointment. The declaration of trust here clearly disclosed that it was governed by the agreement of May 15, 1928, which specifically provided for the filling of vacancies in a manner continuing the representation of all parties interested. This agreement was repeatedly referred to in the trust conveyance.

Not only does section 2287 recognize the right of the Calivada interests to appoint a new trustee to succeed Butler, but under general rules a surviving trustee cannot act under such circumstances. In section 195 of the Restatement of the Law of Trusts it is said: ''If it appears from the terms of the trust that a power conferred upon the trustees was to be exercised by a number of trustees not less than the number originally named, the power cannot be exercised unless and until new trustees are appointed to fill vacancies.'' In an article in 142 American Law Reports, at page 1099, it is stated that where provision for the appointment of successor-trustees discloses an intention that the trust should be executed only by the full number of trustees originally appointed a surviving trustee cannot act without a substitution being made, citing *O'Brien* v. *Battle,* 98 Ga. 766 [25 S.E. 780]; *Van Order* v. *Bailey,* 104 N.J.Eq. 585 [146 A. 419]; *Central Trust & Sav. Co.* v. *Walter,* 314 Pa. 418 [171 A. 890]; *Sheppard* v. *Blitz,* 168 Ore. 691 [126 P.2d 509]; *Massachusetts General Hospital* v. *Amory,* 12 Pick. (Mass.) 445. The trust agreement here clearly provided that the powers of the trust shall be exercised only by two trustees, by expressly providing that any vacancy shall be filled by the party making the original appointment to that place. It fully disclosed conflicting interests as between the two parties to the joint venture, and a fixed intention that the interest of each should continue to be represented in the administration of the trust.

Upon the record before us, the validity of this lease cannot be upheld and the evidence is not sufficient to support the judgment. Other questions, including the propriety of the court's order appointing the appellant as sole trustee, and his right to maintain this action, are not now before us.

The judgment is reversed.

Griffin, J., and Mussell, J., concurred.